MARK D. RUTTER (SBN 58194)
JILL W. BABINGTON (SBN 221793)
CARPENTER, ROTHANS & DUMONT
888 S. Figueroa Street, Suite 1960
Los Angeles, CA 90017
(213) 228-0400 / (213) 228-0401 [Fax]
mrutter@crdlaw.com / jbabington@crdlaw.com

JOSEPH W. FLETCHER (SBN 96813)
City Attorney
JOSE SANDOVAL (SBN 131471)
Managing Senior Assistant City Attorney
CITY OF SANTA ANA
20 Civic Center Plaza, M-29
P.O. Box 1988
Santa Ana, CA 92702
(714) 647-5201 / (714) 647-6515 [Fax]
jsandoval@santa-ana.org

Attorneys for defendants City of Santa Ana
Enrique Ruvalcaba and Blaine Moeller

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM EMIL SAMLAND, III,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SANTA ANA, SANTA ANA POLICE OFFICER BLAIN MOELLER (BADGE #1799), SANTA ANA POLICE OFFICER et al.<br><br>Defendants. | Case No.: SACV07-0441 AG (OPx)<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Fed. R. Civ. P. 56]**<br><br>[Filed concurrently with the Statement of Uncontroverted Facts and Conclusions of Law and Index of Supporting Evidence]<br><br>DATE: To Be Set by Magistrate<br>TIME: To Be Set by Magistrate<br>COURTROOM: 3<br><br>Discovery Cut-Off: August 24, 2009<br>Motion Filing Cut-Off: Oct. 24, 2009<br><br>**Honorable Oswald Parada** |

-1-

1     NOTICE IS HEREBY GIVEN that on the date and time to be set by the

2   Magistrate Judge, in Courtroom 3 of the U.S. District Court, Central District of

3   California, which is located at 3470 Twelfth Street, Riverside, California,

4   Defendants City of Santa Ana and Officers Enrique Ruvalcaba and Blaine Moeller,

5   will and hereby do move the Court as follows:

6        1.    For summary judgment in favor of Defendants and against Plaintiff

7   William Samland, where the plaintiff has failed to raise any genuine issue of

8   material fact.

9        2.    If, for any reason, summary judgment cannot be had, for summary

10   adjudication as to the following claims and issues:

11             a.  For summary adjudication in favor of Defendant City of Santa

12                 Ana, where the plaintiff cannot produce any evidence to suggest

13                 that this defendant had a custom, practice or policy that led to a

14                 violation of his constitutional rights. See Monell v. Department of

15                 Social Services of City of New York, 436 U.S. 658 (1978).

16             b.  For summary adjudication of the plaintiff's claim for violation of

17                 his civil rights under 42 U.S.C. § 1983 premised on his allegation

18                 that he was subjected to an unreasonable seizure, where the

19                 undisputed material facts establish that reasonable suspicion

20                 existed to detain the plaintiff based upon his violations of the

21                 California Vehicle Code.

22             c.  For summary adjudication of the plaintiff's claim for violation of

23                 civil rights under 42 U.S.C. § 1983 premised on his allegation that

24                 he was subjected to an unreasonable search, where the undisputed

25                 material facts establish that the officers were justified in

26                 conducting a protective pat-down search of the plaintiff and where,

27                 as a matter of law, the act of reaching into the plaintiff's pocket

28                 with his consent, for purposes of retrieving his identification does

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE. SUMMARY ADJUDICATION OF ISSUES

1    not constitute a "search" under the Fourth Amendment.

2        d.  For summary adjudication of each of the plaintiff's claims against

3           Officer Blaine Moeller, where Officer Moeller did not handcuff or

4           search the plaintiff.

5        e.  For summary adjudication of each of the plaintiff's claims under

6           42 U.S.C. § 1983 against Officers Moeller and Ruvalcaba where

7           the undisputed material facts establish that these officers are not

8           subject to liability, under the principles of qualified immunity.

9        f.  For summary adjudication of the plaintiff's state claim for

10          violation of his rights under Article I section 13 of the California

11          Constitution where, as a matter of law, this constitutional provision

12          does not create a private right of action.

13       g.  For summary adjudication of the plaintiff's state claim for

14          violation of his rights under California Civil Code § 43 where, as a

15          matter of law, this statutory provision does not create a private

16          right of action.

17       h.  For summary adjudication of the plaintiff's state claim under

18          California Civil Code § 52.3 where, as a matter of law, this

19          statutory provision does not create a private right of action.

20      Because the plaintiff is appearing pro se in this action, the defendants were

21   not required to conduct a pre-filing conference of counsel pursuant to U.S. District

22   Court - Central District - Local Rule 7.3 prior to the filing of this motion.

23      This motion is based upon this Notice of Motion and Motion, the

24   accompanying Memorandum of Points and Authorities, the declarations of Jose

25   Sandoval, Paul Walters, Blaine Moeller and Enrique Ruvalcaba, any matters of

26   which the Court may take judicial notice, all pleadings and papers on file in this

27   action, and upon such other matters as may be presented to the Court.

28   ///

-3-

1    DATED:  October 23, 2009          JOSEPH W. FLETCHER
2                                      City Attorney
                                       City of Santa Ana
3
4                                By:   _____
5                                      JOSE SANDOVAL
6                                      Managing Senior Assistant City Attorney
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-4-

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................ 1

II.  STATEMENT OF FACTS ........................................................ 2

III.  PLAINTIFF'S CLAIMS .......................................................... 4

IV.  STATEMENT OF LAW ........................................................... 4

   A.  The Plaintiff's Claims Are Barred By The *Heck*
        Doctrine. ......................................................................... 4

   B.  The Plaintiff's Claims Under 42 U.S.C. § 1983 For
        Violation Of His Fourth Amendment Rights Premised
        On An "Unreasonable Seizure" Fails, As A Matter Of
        Law   ................................................................................. 5

        1.  Reasonable Suspicion Existed To Detain The
             Plaintiff For Violations Of The California Vehicle
             Code ....................................................................... 6

        2.  The Handcuffing And Continued Detention Of
             The Plaintiff Was Supported By Probable Cause
             To Believe That The Plaintiff Was Under The
             Influence Of A Controlled Substance, In Violation
             Of The California Welfare & Institutions Code ................... 7

   C.  The Plaintiff's Claim Under 42 U.S.C. § 1983 For
        Violation Of His Fourth Amendment Rights Premised
        On An "Unreasonable Search" Fails, As A Matter Of
        Law   10

        1.  The Protective Pat-Down Search Of The Plaintiff
             Was Lawful .............................................................. 11

        2.  The Act Of Officer Ruvalcaba In Reaching Into
             The Plaintiff's Pocket To Retrieve His
             Identification Does Not Constitute A "Search"
             Under The Fourth Amendment And, In Any
             Event, Was Done With The Plaintiff's Consent ................. 12

-i-

D.   The Plaintiff Cannot Establish Any Claim Against The
     City Of Santa Ana Under 42 U.S.C. § 1983 ................................. 14

E.   The Principles Of Qualified Immunity Shield Officers
     Moeller And Ruvalcaba From Liability For The
     Plaintiff's Claims Under 42 U.S.C. § 1983.................................... 16

F.   Each Of The Plaintiff's Claims Against Officer Blaine
     Moeller Fail, Where The Plaintiff Acknowledges That
     He Was Not Handcuffed Or Searched By Officer
     Moeller.......................................................................................... 17

G.   Each Of The Plaintiff's State Tort Claims Should Be
     Summarily Adjudicated, Where None Of The Statutes
     On Which They Are Based Create A Private Right Of
     Action ........................................................................................... 17

V.   CONCLUSION...................................................................................... 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3    Atwater v. Lago Vista, 532 U.S. 318 (2001) ................................................. 7

4    Berry v. Baca, 379 F.3d 764 (9th Cir. 2004) ............................................ 14

5

6    Brown v. County of Kern, 2008 WL 544565 (E.D. Cal. 2008) .......................... 18

7    Cady v. Dombrowski, 417 U.S. 433 (1973) ...................................................... 13

8    Chimel v. California, 395 U.S. 752 (1969) ....................................................... 12

9

10   Dubner v. City & County of San Francisco, 266 F.3d 959 (9th Cir. 2001) ........ 7

11   Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043 (9th Cir. 2002) ................... 16

12

13   Gomez v. Herndon, 2009 WL 1481115 (C.D.Cal. 2009) .................................... 9

14   Harlow v. Fitzgerald, 457 U.S. 800 (1982) ....................................................... 16

15   Heck v. Humphrey, 512 U.S. 477 (1994) ....................................................... 4, 5

16   Hoffa v. United States, 385 U.S. 293 (1966) .................................................... 13

17

18   Illinois v. Wardlow, 528 U.S. 119 (2000) ...................................................... 6, 9

19   Lopez v. Youngblood, 609 F.Supp.2d 1125 (E.D. Cal. 2009) .......................... 18

20

21   Manning v. City of Rohnert Park, 2007 WL 1140434 (N.D. Cal. 2007) .......... 18

22   Menotti v. City of Seattle, 409 F.3d 1113 (9th Cir. 2005) ................................. 14

23   Monell v. Department of Social Services of City of New York,

24      436 U.S. 658 (1978) ..................................................................................... 14

25   Mott v. Calderon, 2006 WL 3388588 (N.D.Cal. 2006) ...................................... 9

26

27   Pankey v. City of Concord, 2008 WL 793873 (N.D.Cal. 2008) ......................... 9

28   People v. Adams, 175 Cal.App.3d 855 (1985) ................................................. 10

-iii-

People v. Glaser, 11 Cal.4th 354 (1995)........................................................... 11

People v. Juarez, 35 Cal.App.3d 635 (1973) ..................................................... 10

People v. Simon, 45 Cal.2d 645 (1955) ............................................................ 10

People v. Snider, 76 Cal.App.3d 560 (1978) ...................................................... 9

People v. Holloway, 176 Cal.App.3d 150 (1985) ............................................. 10

Phillips v. Hust, 477 F.3d 1070 (9th Cir. 2007).................................................. 16

In Re Arturo, 27 Cal.4th 60 (2002)................................................................... 12

Richards v. Wisconsin, 520 U.S. 385 (1997)..................................................... 11

Saucier v. Katz, 533 U.S. 194 (2001) ............................................................... 16

Schneckloth v. Bustamonte, 412 U.S. 218 (1973)............................................. 12

Terry v. Ohio, 392 U.S. 1 (1968)........................................................................ 6

United States v. Carrillo, 902 F.2d 1406 (9th Cir. 1990) ................................... 9

United States v. Ervin, 907 F.2d 1534 (5th Cir. 1990)........................................ 9

United States v. Gilliard,  847 F.2d 21 (1st Cir. 1988)...................................... 11

United States v. Hartz, 458 F.3d 1011 (9th Cir. 2006)........................................ 6

United States v. Hensley, 469 U.S. 221 (1985) ................................................. 11

United States v. Hernandez-Torres, 2006 WL696184 (D.Nev. 2006) ................ 9

United States v. Jensen, 425 F.3d 698 (9th Cir. 2005) ....................................... 7

United States v. Lopez-Soto, 205 F.3d 1101 (9th Cir. 2000) .............................. 6

United States v. Mendenhall, 446 U.S. 544 (1980) ............................................ 6

United States v. Miller, 425 U.S. 435 (1976) .............................................. 12, 13

-iv-

United States v. Onumonu, 967 F.2d 782 (2nd Cir. 1992) .................................. 9

United States v. Ortiz, 422 U.S. 891 (1975) .......................................................... 9

United States v. Robinson,119 F.3d 663 (8th Cir. 1997) .................................. 11

United States v. Tarango-Hinojos, 791 F.2d 1174 (5th Cir. 1986) .................. 10

United States v. Valencia-Amezcua, 278 F.3d 901 (9th Cir. 2002) ................... 7

United States v. York, 895 F.2d 1026 (5th Cir. 1990) ....................................... 13

West v. Atkins, 487 U.S. 42 (1988) ........................................................................ 5

**Statutes**

U.S. Const., amend IV ............................................................................................. 6

Cal. Civ. Code § 43 ........................................................................................... 17, 18

Cal. Civ. Code § 52.3 ................................................................................... 17, 18, 19

Cal. Const., art. I §13 ............................................................................................. 17

Cal. Veh. Code §21453 ............................................................................................ 6

Cal. Veh. Code §21456 ............................................................................................ 6

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.   INTRODUCTION**

3       In this civil action, Plaintiff William Samland alleges that his Fourth

4  Amendment rights were violated by Santa Ana Police Department ("SAPD")

5  Officers Blaine Moeller and Enrique Ruvalcaba when he was detained and cited

6  for crossing a crosswalk against the red pedestrian light.  The plaintiff does not

7  deny that he violated the relevant provisions of the California Vehicle Code;

8  rather, he claims that the officers' conduct during the detention was unreasonable.

9       Each of the plaintiff's claims is subject to summary judgment.  First, the

10 officers possessed reasonable suspicion to detain the plaintiff when they observed

11 him violate at least two provisions of the California Vehicle Code.  Second, this

12 reasonable suspicion to detain elevated to probable cause to arrest when, after

13 contacting the plaintiff, the plaintiff behaved in a manner consistent with someone

14 under the influence of a controlled substance (i.e. lack of clothing and profuse

15 sweating on a cold night, rapid speech, furtive glances as if to find an escape route,

16 implausible responses to straightforward questions, evasive conduct).  Third, the

17 protective pat-down search of the plaintiff was justified, given the plaintiff's

18 conduct.  Fourth, Officer Ruvalcaba's conduct in reaching into the plaintiff's

19 pocket, with the plaintiff's consent, to retrieve his identification does not qualify as

20 a "search" under the Fourth Amendment.  Fifth, the plaintiff cannot present any

21 evidence to support his claims against the City of Sana Ana.  Finally, each of the

22 plaintiff's three state tort claims should be dismissed because none of the statutes

23 or constitutional provisions create a private right of action.  Accordingly, it is

24 respectfully submitted that summary judgment should be granted as to each of the

25 plaintiff's claims.

26 ///

27 ///

28 ///

-1-

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES

## II.   **STATEMENT OF FACTS**

On April 20, 2006, Defendants Blaine Moeller and Enrique Ruvalcaba, police officers with the Santa Ana Police Department ("SAPD"), were on patrol in the area of Ross Street and Santa Ana Boulevard in the City of Santa Ana. [Fact 1]. Shortly before 9:00 p.m., Officers Moeller and Ruvalcaba observed a man [later identified as Plaintiff William Samland] walking northbound in a crosswalk across Santa Ana Boulevard against the red traffic light and red pedestrian light in violation of California Vehicle Code §§21453(d) and 21456(b). [Fact 2].

Due to the relatively cool temperature and windy conditions, both Officers Moeller and Ruvalcaba were wearing jackets that night. [Fact 4]. However, when the officers observed Mr. Samland jaywalking, he was bare chested and carrying his shirt/jacket with one of his arms. [Fact 5].

The officers stopped their patrol car and initiated a detention of Mr. Samland. [Fact 6]. When the officers approached Mr. Samland to detain him, he was sweating profusely and he was walking – not running – northbound on Ross Street, north of its intersection with Santa Ana Boulevard. [Fact 7]. Upon initial contact, Mr. Samland told the officers that he was in a hurry to catch a train. [Fact 8]. The officers found Mr. Samland's comment about hurrying to the train curious because Mr. Samland had been walking *northbound* on Ross Street and, to get to the train station, he would have had to walk *eastbound* on Santa Ana Boulevard. [Fact 9].

In addition, Mr. Samland told the officers that he was coming from a movie shoot. [Fact 10]. Mr. Samland also told the officers that he had left his wallet behind and had been at First Street and Ross Street. [Fact 11]. Again, the officers found Mr. Samland's comments curious and implausible. [Fact 12]. The officers knew there had been a movie shoot at nearby Sasscer Park. However, that movie shoot had ended approximately four hours prior. Moreover, Sasscer Park was on Ross Street between Third and Fourth Streets, not near First Street. [Fact 13]. The

1  officers also knew that Birch Park, which was on Ross Street near First Street
2  (where Mr. Samland had purportedly come from), was a location known for drug
3  transactions. [Fact 14].

4      When the officers made further inquiries of Mr. Samland, he refused to
5  respond to the officers. [Fact 15].

6      During his detention by Officers Moeller and Ruvalcaba, Mr. Samland
7  spoke rapidly and appeared to be nervous and agitated.  [Fact 16].  Moreover, Mr.
8  Samland looked around in a manner which suggested to the officers that he might
9  be looking for an escape route. [Fact 17].  The totality of Mr. Samland's behavior
10 led the officers to believe, based upon their training and experience, that Mr.
11 Samland was under the influence of methamphetamine or another stimulant.  [Fact
12 18].

13     For officer safety, Officer Ruvalcaba placed Mr. Samland in handcuffs and
14 conducted a protective pat-down search of Mr. Samland's person.  [Fact 19].
15 Because Officer Ruvalcaba needed Mr. Samland's identification to write a citation,
16 the officer asked Mr. Samland if he could retrieve his identification from his
17 pocket and Mr. Samland consented.  [Facts 20-21].  Officer Ruvalcaba reached
18 into Mr. Samland's pocket and pulled out his identification, which was among a
19 clump of other items.  [Fact 22].

20     Because it was cold outside and Mr. Samland was not wearing a shirt, the
21 officers placed him in the back seat of the patrol car while Officer Moeller
22 prepared the citation.  [Fact 23].  Although the officers clearly could have arrested
23 Mr. Samland for being under the influence of a controlled substance in violation of
24 the California Welfare and Institutions Code based upon the totality of his
25 behavior, they, instead, only cited him for jaywalking.  [Fact 24].

26     After Officer Moeller prepared the citation, the officers removed the
27 handcuffs from Mr. Samland and returned his personal belongings to him.  Mr.
28 Samland signed the citation and was released.  [Fact 25].  Following a trial, Mr.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES

1  Samland was found guilty of violating California Vehicle Code § 21456(b). [Fact
2  27].

3      The entire incident – from the time the officers first observed Mr. Samland
4  until Mr. Samland was released – was less than fourteen minutes. [Fact 26]. At no
5  time during the detention did Mr. Samland complain of pain or other injuries to the
6  officers. [Fact 27]. Officer Moeller did not participate in the search of Mr.
7  Samland or the handcuffing of Mr. Samland. [Fact 28].

8  **III.   PLAINTIFF'S CLAIMS**

9      The Third Amended Complaint appears to allege five claims against the City
10  of Santa And and SAPD Officers Blaine Moeller and Enrique Ruvalcaba:

11      (1)   Freedom from unreasonable searches in violation of the Fourth
12          Amendment (presumably under 42 U.S.C. §1983);

13      (2)   Freedom from unreasonable seizures in violation of the Fourth
14          Amendment (presumably under 42 U.S.C. §1983);

15      (3)   Violation of rights under Article 1 Section 13 of the California
16          Constitution;

17      (4)   Violation of rights under California Civil Code § 43; and,

18      (5)   Violation of rights under California Civil Code § 52.3.

19      As will be set forth below, each of these claims is subject to summary
20  judgment.

21  **IV.   STATEMENT OF LAW**

22      **A.   The Plaintiff's Claims Are Barred By The _Heck_ Doctrine.**

23      Each of the plaintiff's claims in this action arise out of the events leading up
24  to his citation for violation of various provisions of the California Vehicle Code.
25  Following a trial concerning these violations, the plaintiff was found guilty. [Fact
26  27]. Because the plaintiff's conviction has not been reversed, expunged, declared
27  invalid or called into question, his claims against the defendants are barred by
28  Supreme Court's doctrine in Heck v. Humphrey, 512 U.S. 477 (1994).

-4-

1      In <u>Heck</u>, the Supreme Court held that, "In order to recover damages for

2  allegedly unconstitutional conviction or imprisonment, or for other harm caused by

3  actions whose unlawfulness would render a conviction or sentence invalid, a

4  Section 1983 plaintiff must prove that the conviction or sentence has been reversed

5  on direct appeal, expunged by executive order, declared invalid by a state tribunal .

6  . . or called into question by a federal court's issuance of a writ of habeas corpus . .

7  . A claim for damages bearing that relationship to a conviction or sentence that has

8  not been so invalidated is not cognizable under Section 1983." <u>Id.</u> at 477.

9      Here, if the Court were to conclude that the seizure of the plaintiff was

10  unlawful, such a conclusion would imply the invalidity of his conviction.

11  Therefore, it is respectfully submitted that the plaintiff's claims are barred by the

12  principles set forth in <u>Heck</u>.

13      **B.**    <u>**The Plaintiff's Claim Under 42 U.S.C. § 1983 For Violation Of**</u>

14              <u>**His Fourth Amendment Rights Premised On An "Unreasonable**</u>

15              <u>**Seizure" Fails, As A Matter Of Law.**</u>

16      To establish any claim under 42 U.S.C. § 1983 against an individual (as

17  opposed to a municipality or other governmental entity), the plaintiff must make

18  two threshold showings: (1) the defendant acted under the color of state law; and,

19  the defendants' conduct violated the plaintiff's constitutional rights. <u>West v.</u>

20  <u>Atkins</u>, 487 U.S. 42 (1988). The focus of this motion is not whether Officers

21  Ruvalcaba and Moeller were acting under color of law, but rather on whether their

22  conduct violated the plaintiff's constitutional rights.

23      The plaintiff claims that he was subject to an unreasonable search and

24  seizure in violation of the Fourth Amendment. With respect to his unreasonable

25  seizure claim, the plaintiff suggests that his detention was unreasonable. As will

26  be discussed below, the detention of the plaintiff was lawful and justified.

27  ///

28  ///

1     **1.    Reasonable Suspicion Existed To Detain The Plaintiff For**

2          **Violations Of The California Vehicle Code.**

3       A search or seizure is unlawful under the Fourth Amendment when it is

4 accomplished without probable cause, a warrant, excuse or justification. <u>See</u> U.S.

5 CONST., amend IV; <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980). "[An]

6 officer may, consistent with the Fourth Amendment, conduct a brief, investigatory

7 stop when the officer has a reasonable, articulable suspicion that criminal activity

8 is afoot." <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000), *citing* <u>Terry v. Ohio</u>, 392

9 U.S. 1, 30 (1968). With regard to detentions for violations of the California

10 Vehicle Code, police officers need only have "reasonable suspicion" to believe that

11 an individual has broken a law. <u>See</u> <u>United States v. Lopez-Soto,</u> 205 F.3d 1101,

12 1104-05 (9th Cir. 2000) ("We . . . reaffirm that the Fourth Amendment requires

13 only reasonable suspicion in the context of investigative traffic stops."); <u>United

14 States v. Hartz</u>, 458 F.3d 1011 (9th Cir. 2006). Reasonable suspicion exists if

15 "specific, articulable facts . . . together with objective and reasonable inferences"

16 suggest that the persons detained by the police are engaged in criminal activity.

17 Lopez-Soto, 205 F.3d at 1105.

18       Here, Officers Ruvalcaba and Moeller observed the plaintiff walk across a

19 crosswalk against a red traffic light and red pedestrian light in violation of

20 California Vehicle Code §§21453(d) *("Unless otherwise directed by a pedestrian*

21 *control signal as provided in Section 21456, a pedestrian facing a steady circular*

22 *red or red arrow signal shall not enter the roadway")* and 21456(b) (*"Flashing or*

23 *steady "DONT WALK" or "WAIT" or approved "Upraised Hand" symbol. No*

24 *pedestrian shall start to cross the roadway in the direction of the signal, but any*

25 *pedestrian who has partially completed crossing shall proceed to a sidewalk or*

26 *safety zone or otherwise leave the roadway while the "WAIT" or "DONT WALK"*

27 *or approved "Upraised Hand" symbol is showing. ").* [Fact 2]. The plaintiff does

28 not – and cannot – dispute that he violated these provisions of the California

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES

1   Vehicle Code. <u>See</u> Fact 27.  Therefore, clearly the detention of the plaintiff was
2   lawful and did not violate the Fourth Amendment.

3           **2.      The Handcuffing And Continued Detention Of The Plaintiff**
4                   **Was Supported By Probable Cause To Believe That The**
5                   **Plaintiff Was Under The Influence Of A Controlled**
6                   **Substance, In Violation Of The California Welfare &**
7                   **Institutions Code.**

8           Although it is unclear, it appears that the plaintiff is arguing that even if he
9   did violate the provisions of the California Vehicle Code for which he was cited,
10  the officers violated his constitutional rights when they handcuffed him and
11  detained him for approximately 14 minutes.  Neither the facts in this case nor the
12  pertinent case authority supports such an argument.

13          The analysis of whether a probable cause exists to detain or arrest a person
14  focuses on reasonableness and whether "at the moment of arrest the facts and
15  circumstances within the knowledge of the arresting officers and of which they had
16  reasonably trustworthy information were sufficient to warrant a prudent [person] in
17  believing that the [individual] had committed or was committing an offense."
18  <u>United States v. Jensen</u>, 425 F.3d 698, 704 (9th Cir. 2005).  A probable cause
19  determination is made in light of the totality of the circumstances. <u>See Dubner v.</u>
20  <u>City & County of San Francisco</u>, 266 F.3d 959, 966 (9th Cir. 2001).  Probable
21  cause to arrest an individual without a warrant exists if the facts known to a police
22  officer suggest a "fair probability" that the individual has committed a crime. <u>See</u>
23  <u>United States v. Valencia-Amezcua</u>, 278 F.3d 901, 906 (9th Cir. 2002).

24          First and foremost, it should be noted that regardless of how the plaintiff
25  would like to characterize his infraction, the United States Supreme Court has
26  consistently held, and recently reaffirmed, that even minor infractions provide
27  probable cause for an arrest. <u>See</u> <u>Atwater v. Lago Vista</u>, 532 U.S. 318, 354 (2001)
28  ("If an officer has probable cause to believe that an individual has committed even

-7-

1  a very minor criminal offense in his presence, he may, without violating the Fourth

2  Amendment, arrest the offender."). Thus, the plaintiff's commission of at least

3  two violations of the California Vehicle Code – regardless of the arguably minor

4  nature of the infraction – provided Officers Ruvalcaba and Moeller probable cause

5  to arrest the plaintiff.

6       Moreover, probable cause to arrest the plaintiff was amplified by the

7  plaintiff's behavior during his detention, which gave the officers reason to believe

8  that there was a "fair probability" that the plaintiff was under the influence of a

9  controlled substance in violation of the California Welfare and Institutions Code.

10 The officers observed the plaintiff bare-chested and sweating profusely on a cold

11 night. [Facts 4-5]. (The minimum temperature on that day was 53.1 degrees.

12 [Fact 3].) Furthermore, the plaintiff spoke rapidly, was anxious to depart company

13 from the officers and nervously glanced around as if he was looking for an escape

14 route. [Facts 7-17]. Corroborating the officers' suspicion that the plaintiff was

15 under the influence of a controlled substance even further was the plaintiff's

16 curious and implausible explanations to simple questions by the officers. For

17 instance, when asked where he was going, the plaintiff told the officers that he was

18 going to the train station. However, the plaintiff was not walking toward the train

19 station. [Facts 8-9]. The plaintiff told the officers that he was coming from a

20 movie shoot. However, the officers knew that the nearby movie shoot had ended

21 four hours earlier. [Facts 10, 13]. Furthermore, the plaintiff said that he was

22 returning from retrieving his wallet not at a location near the movie shoot, but at a

23 location near a park where the officers knew was a location commonly known for

24 drug transactions. [Facts 11, 14]. These comments, along with the plaintiff's

25 objective physical signs, were sufficient to warrant the prudent officers in

26 believing that the plaintiff was under the influence of a controlled substance, in

27 violation of the California Welfare & Institutions Code.

28 ///

1    Both California and federal law support the conclusion that these factors

2  observed by the officers, when viewed together, give rise to probable cause.

3    Nervousness, rapid speech, evasive responses and profuse sweating

4  unwarranted by weather are all recognized as signs of suspicious circumstances or

5  being under the influence of drugs.  See Illinois v. Wardlow, 528 U.S. 119, 124

6  (2000) ("Our cases have also recognized that nervous, evasive behavior is a

7  pertinent factor . . ."); United States v. Onumonu, 967 F.2d 782, 789 (2nd Cir.

8  1992) (nervousness and profuse sweating in air conditioned building relevant

9  factor in probable cause determination); Gomez v. Herndon, 2009 WL 1481115

10  (C.D.Cal. 2009) (observation that individual "was very nervous, sweating

11  profusely" was relevant factor in probable cause determination); Pankey v. City of

12  Concord, 2008 WL 793873 (N.D.Cal. 2008) ("He also observed plaintiff's speech

13  was rapid and that he was sweating profusely, even in cold weather"); Mott v.

14  Calderon, 2006 WL 3388588 (N.D.Cal. 2006) ("He noted petitioner was sweating

15  profusely despite the cool temperature"); United States v. Hernandez-Torres, 2006

16  WL696184 (D.Nev. 2006) ("sweating profusely although it was chilly outside").

17    So too, knowledge that one has come from or going to a high narcotics area

18  is a factor in the totality of circumstances and probable cause analysis.  See People

19  v. Snider, 76 Cal.App.3d 560, 566 (1978) ("defendant had come from a high

20  narcotics area").

21    Further, a detainee's responses – or refusal to respond – to officer inquiries

22  play into the probable cause analysis.  See United States v. Ortiz, 422 U.S. 891,

23  897 (1975) ("the responses they give to officers' questions . . . [is a factor that]

24  properly may be taken into account in deciding whether there is probable cause");

25  United States v. Ervin, 907 F.2d 1534, 1540 (5th Cir. 1990) ("false explanations of

26  his activities and whereabouts" relevant in probable cause analysis); United States

27  v. Carrillo, 902 F.2d 1406, 1412 (9th Cir. 1990) (implausible explanation relevant

28  in probable cause analysis); United States v. Tarango-Hinojos, 791 F.2d 1174,

1   1176-1177 (5th Cir. 1986) (uncooperative with questioning); <u>People v. Simon</u>, 45

2   Cal.2d 645, 650 (1955) ("There is, of course, nothing unreasonable in an officer's

3   questioning persons outdoors at night, and it is possible that in some circumstances

4   even a refusal to answer would, in the light of other evidence, justify an arrest");

5   <u>People v. Adams</u>, 175 Cal.App.3d 855, 861 (1985) ("vague and ambiguous

6   answers"); <u>People v. Juarez</u>, 35 Cal.App.3d 635 (1973) (detainee said walking

7   home, but going in wrong direction).

8          All of the factors present lead inescapably to the conclusion that the

9   plaintiff's detention was not only supported by reasonable suspicion, but probable

10  cause.  As one California court aptly observed, "we must allow those we hire to

11  maintain our peace as well as to apprehend criminals after the fact, to give

12  appropriate consideration to their surroundings and to draw rational inferences

13  therefrom, unless we are prepared to insist that they cease to exercise their senses

14  and their reasoning abilities the moment they venture forth on patrol." <u>People v.</u>

15  <u>Holloway</u>, 176 Cal.App.3d 150, 155 (1985).

16         Based on the foregoing, it is respectfully submitted that the plaintiff's claim

17  for unreasonable seizure lacks merit and should be summarily dismissed.

18    **C.     The Plaintiff's Claim Under 42 U.S.C. § 1983 For Violation Of**

19            **His Fourth Amendment Rights Premised On An "Unreasonable**

20            **Search" Fails, As A Matter Of Law.**

21         The plaintiff claims that during his detention, he was subjected to an

22  unreasonable seizure.  Based on the allegations in the Third Amended Complaint,

23  it appears as though there are two bases for this claim.  First, it appears as though

24  the plaintiff is suggesting that the protective pat-down search was unreasonable

25  because "there was no reason to assume that [he] was armed and/or dangerous."

26  <u>See</u> 3d Am. Compl., Page 5.  Second, it appears as though the plaintiff is

27  suggesting that Officer Ruvalcaba's conduct in reaching into his pants pocket to

28  retrieve his identification was unreasonable because, although the plaintiff

-10-

1   consented to the removal of his identification, he did not like the fact that his

2   identification was within a clump of items in his pocket.  Again, the plaintiff's

3   claim finds no support in the law.

4           **1.**      **The Protective Pat-Down Search Of The Plaintiff Was**

5                  **Lawful.**

6           As discussed above, it is uncontroverted that probable cause, much less

7   reasonable suspicion, existed to detain the plaintiff.  During this detention, the

8   plaintiff exhibited numerous signs that he was under the influence of a controlled

9   substance in violation of the Welfare and Institutions Code (i.e. lack of clothing

10  and profuse sweating on a cold night, rapid speech, furtive glances as if to find an

11  escape route, implausible responses to straightforward questions, evasive conduct).

12          The plaintiff's conduct provided the officers with ample justification to

13  conduct a pat-down search for officer safety.  See United States v. Hensley, 469

14  U.S. 221, 235 (1985) (holding that officers making Terry stops are "authorized to

15  take such steps as [are] reasonably necessary to protect their personal safety and to

16  maintain the status quo during the course of the stop").  It is well-established that

17  protective pat-down searches are justified in situations where officers believe that

18  illegal drugs and narcotics are involved, given the close relationship between drugs

19  and violence.  See Richards v. Wisconsin, 520 U.S. 385, 391, fn.2 (1997) ("This

20  Court has encountered before the links between drugs and violence"); see also

21  United States v. Gilliard,  847 F.2d 21, 25 (1st Cir. 1988) (stating that firearms are

22  known to be "tools of the trade" in the narcotics business); People v. Glaser, 11

23  Cal.4th 354, 367 (1995).  The plaintiff's indication that he was coming from an

24  area the officers knew to be associated with drug activity further justified the pat-

25  down search.  "It is reasonable for an officer to believe that an individual may be

26  armed and dangerous when that individual is suspected of being involved in a drug

27  transaction because 'weapons and violence are frequently associated with drug

28  transactions.'"  United States v. Robinson,119 F.3d 663, 667 (8th Cir. 1997).

1    Clearly, Officer Ruvalcaba was justified in conducting a protective pat-
2  down search of the plaintiff.  It would be impractical in the area of law
3  enforcement to suggest that an officer wait for a drug suspect to reach for a
4  weapon before conducting a pat down for his and his fellow officer's safety.

5              **2.    The Act Of Officer Ruvalcaba In Reaching Into The**
6              **Plaintiff's Pocket To Retrieve His Identification Does Not**
7              **Constitute A "Search" Under The Fourth Amendment And,**
8              **In Any Event, Was Done With The Plaintiff's Consent.**

9    As the officers were citing the plaintiff for an infraction, it was their "right
10  and obligation" to determine the true identity of plaintiff to ensure his true name
11  appeared on the citation and written promise to appear.  See In Re Arturo, 27
12  Cal.4th 60, 78 (2002).  In furtherance of this objective, Officer Ruvalcaba asked
13  permission to retrieve the plaintiff's driver's license from his pocket.  The plaintiff
14  consented.  [Facts 20-21].  It turned out that the plaintiff's driver's license was
15  contained within a clump of materials in his pocket.  It appears that the plaintiff
16  does not object to the removal of his driver's license, but suggests that the officer
17  should have somehow extricated the license from the clump of items before
18  withdrawing his hand from the plaintiff's pocket.  This argument lacks merit.

19    First, one of most recognized exceptions to the requirement of a warrant or
20  probable cause to search is consent.  Schneckloth v. Bustamonte, 412 U.S. 218,
21  219 (1973).  Thus, the plaintiff's permission to Officer Ruvalcaba to retrieve his
22  identification is fatal to his claim for unreasonable search.  Similarly, a well
23  recognized exception to the warrant requirement is a search incident to a lawful
24  arrest.  Chimel v. California, 395 U.S. 752, 762-763 (1969).

25    Moreover, even if the plaintiff did not give Officer Ruvalcaba his consent to
26  retrieve his identification, Officer Ruvalcaba's conduct in retrieving the plaintiff's
27  identification does not constitute a "search" for purposes of the Fourth
28  Amendment.  In United States v. Miller, 425 U.S. 435 (1976), the Supreme Court

-12-

1 noted that a "search" does not occur within the meaning of the Fourth Amendment
2 "unless there is an intrusion into a zone of privacy, into 'the security a man relies
3 upon when he places himself or his property within a constitutionally protected
4 area.'" Id. at 440, citing Hoffa v. United States, 385 U.S. 293, 301-302, (1966).
5 Indeed, the Supreme Court has held that certain governmental intrusions do not fall
6 within the parameters of the Fourth Amendment because those intrusions "for want
7 of a better term, may be described as community caretaking functions. . ." Cady v.
8 Dombrowski, 417 U.S. 433, 441 (1973). In United States v. York, 895 F.2d 1026
9 (5th Cir. 1990), the Court held that police deputies did not engage in a "search" of
10 a defendant's home when the deputies entered the home without permission to
11 assist a houseguest in removing personal possessions from the home. The Court
12 noted that they "need not decide whether [the houseguest] had the authority to give
13 valid consent for a search of the premises. The police initially entered only the
14 first room of the dwelling. From that point, where they had a right to be as
15 peacekeepers, they had a plain view of the guns which prompted the call to the
16 ATF. This reasonable police action did not violate any privacy interest [the
17 defendant] had in his home . . . **No fourth amendment "search" took place."** Id.
18 at 1030 (emphasis added).
19     The same analysis can be applied in this context. During the course of
20 writing a citation to the plaintiff for his infractions, because the plaintiff was
21 handcuffed and Officer Ruvalcaba needed the plaintiff's identification, the officer
22 asked permission to retrieve the plaintiff's identification from his pocket. The
23 plaintiff agreed. Upon reaching into the plaintiff's pocket, Officer Ruvalcaba
24 withdrew the clump of items in which the identification was contained. This
25 conduct does not qualify as a "search" under the Fourth Amendment. Therefore,
26 the plaintiff's claim for unreasonable search is also subject to summary judgment.
27 ///
28 ///

-13-

1   **D.     The Plaintiff Cannot Establish Any Claim Against The City Of**
2   **Santa Ana Under 42 U.S.C. § 1983.**

3   In Monell v. Department of Social Services of City of New York, 436 U.S.
4   658 (1978), the Supreme Court rejected the proposition that a governmental entity
5   may be held liable under a respondeat superior theory for an injury caused solely
6   by its employees or agents.  Instead, the Court held that to maintain a cause of
7   action against a governmental entity for a civil rights violation under 42 U.S.C. §
8   1983, a plaintiff must establish that the governmental entity had a "custom,
9   practice, and policy" that led to a violation of civil rights.  Id. at 694.  Specifically,
10  the Court stated, "[T]he language of Section 1983, read against the background of
11  its legislative history, compels the conclusion that Congress did not intend
12  municipalities to be held liable unless action pursuant to official municipal policy
13  of some sort caused a constitutional tort."  Id. at 691.

14  To overcome summary judgment on a Monell claim, the plaintiff must make
15  a threshold showing that his constitutional rights were violated.  Berry v. Baca,
16  379 F.3d 764, 767 (9th Cir. 2004).  As outlined above, the plaintiff cannot produce
17  any evidence to support this threshold element.  However, even if the plaintiff
18  could surmounts the first evidentiary hurdle of establishing a constitutional
19  deprivation (which he has not), the plaintiff must then present evidence to
20  surmount the second evidentiary hurdle of his Monell claim.  In this regard, the
21  plaintiff must be able to produce either:  (1) evidence that showed a "longstanding
22  practice or custom which constitutes the standard procedure of the local
23  governmental entity"; (2) evidence to show that a decision-making official was, as
24  a matter of state law, a "final policymaking authority" whose actions represent
25  official policy in the area of decision; or (3) evidence to show that an official with
26  final policymaking authority "either delegated that authority to, or ratified the
27  decision of, a subordinate."  Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th
28  Cir. 2005).

-14-

1  The plaintiff cannot provide this Court with any evidence to support a

2  <u>Monell</u> claim on any of these three theories. The City, however, has produced

3  evidence to dispel any such claim. To this end, the uncontroverted facts establish

4  that the SAPD makes every effort to ensure that its officers act lawfully and do not

5  violate civil rights when enforcing the law. [Fact 30]. First, prior to hiring any

6  officer, the SAPD performs a thorough civil, criminal and family background

7  check on each applicant. In addition, each applicant is required to submit to drug

8  and urine testing, among other tests. [Fact 31]. If any applicant's background

9  screening, drug testing or other tests reveal facts and/or characteristics not

10  appropriate for a police officer, the SAPD does not select that applicant for

11  employment. [Fact 32].

12  Second, all SAPD officers, including Officers Enrique Ruvalcaba and Blaine

13  Moeller had, at the time of the incident, met the training requirements set by the

14  California Commission on Peace Officer Standards and Training [POST] for

15  certification as peace officers and had met continuing training requirements of

16  POST. [Fact 33]. The SAPD ensures that all personnel are trained in a manner

17  and method that prevents the deprivation of citizens' constitutional rights,

18  including training on the proper level of force to be used in any given situation and

19  the grounds for, and permissible extent of, detention and searching. [Fact 34].

20  Third, it is the policy of the SAPD to make all arrests, conduct all searches,

21  and carry out all seizures of property in accordance with current laws and court

22  decisions. [Fact 35]. In those situations where the SAPD concludes that an officer

23  has failed to comply with its policies concerning arrests, searches and seizures, the

24  officer is subject to discipline, up to and including termination and retraining.

25  [Fact 36]. Moreover, there does not exist, nor did there exist at the time of the

26  incident that gives rise to this litigation, within the SAPD, nor does the SAPD

27  condone a custom, practice or policy of conducting unreasonable searches and

28  seizures, using excessive force against detainees or arrestees or filing false police

-15-

1   reports, falsifying evidence or engaging in "cover-ups". [Facts 37-39].

2       These uncontroverted facts and the plaintiff's lack of any facts that would

3   support a <u>Monell</u> claim against the City of Santa Ana establish that summary

4   judgment in favor of the City of Santa Ana is proper.

5       **E.**    <u>**The Principles Of Qualified Immunity Shield Officers Moeller**</u>

6           <u>**And Ruvalcaba From Liability For The Plaintiff's Claims Under**</u>

7           <u>**42 U.S.C. §1983.**</u>

8       Even if this Court were to determine that the plaintiff could establish his

9   claim for civil rights violations under 42 U.S.C. § 1983, Officers Ruvalcaba and

10  Moeller would nevertheless be immune from such claims under the principles of

11  qualified immunity. Qualified immunity protects "government officials . . . from

12  liability for civil damages insofar as their conduct does not violate clearly

13  established statutory or constitutional rights of which a reasonable person would

14  have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Phillips v. Hust</u>,

15  477 F.3d 1070, 1079 (9th Cir. 2007). The "concern of the immunity inquiry is to

16  acknowledge that reasonable mistakes can be made," and that it is "often difficult

17  for an officer to determine how the relevant legal doctrine will apply to the factual

18  situation that he faces." <u>Estate of Ford v. Ramirez-Palmer</u>, 301 F.3d 1043, 1049

19  (9th Cir. 2002). The critical question is whether "the contours of the right were

20  sufficiently clear that a reasonable official would understand that what he is doing

21  violates the right." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). Whether a right is

22  clearly established must be "undertaken in light of the specific context of the case,

23  not as a broad general proposition." <u>Saucier</u>, 533 U.S. at 201.

24      In this situation, Officers Ruvalcaba and Moeller were faced with the choice

25  of risking their own safety and possible escape when dealing with the plaintiff's

26  bizarre behavior or making a brief, de minimis search and seizure of the plaintiff.

27  Even though probable cause clearly existed to arrest the plaintiff and take him to

28  jail, the plaintiff was simply detained and subjected to a brief pat-down search

-16-

1 before being released.  If the officers were mistaken in their belief, their mistake
2 was reasonable and each officer should be entitled to qualified immunity.

3    **F.    Each Of The Plaintiff's Claims Against Officer Blaine Moeller**
4         **Fail, Where The Plaintiff Acknowledges That He Was Not**
5         **Handcuffed Or Searched By Officer Moeller.**

6         At a very minimum, Officer Blaine Moeller should be dismissed from this
7 action where he did not engage in the conduct that gives rise to the plaintiff's
8 claims (i.e. the alleged unlawful search and seizure).  [Fact 29].  Instead, it was
9 Officer Ruvalcaba who handcuffed the plaintiff, conducted the pat-down search
10 and retrieved the plaintiff's identification from his pocket.  [Facts 19, 22].
11 Therefore, liability cannot be imposed upon Officer Moeller as to any of the
12 plaintiff's claims.

13   **G.    Each Of The Plaintiff's State Tort Claims Should Be Summarily**
14         **Adjudicated, Where None Of The Statutes On Which They Are**
15         **Based Create A Private Right Of Action.**

16         Along with the alleged violations of the Fourth Amendment, the plaintiff
17 claims that the officers' conduct violated his rights under California Constitution,
18 Article 1, section 13, and California Civil Code §§ 43 and 52.3.  These
19 constitutional provisions and statutes do not provide a remedy for the plaintiff's
20 claims, where they do not create a private right of action.

21         Each of the three constitutional provisions and/or statutes on which the
22 plaintiff relies simply express general rights; they do not create actions for
23 damages.  Article 1, section 13 of the California Constitution mirrors the Fourth
24 Amendment and reads, "The right of the people to be secure in their persons,
25 houses, papers, and effects against unreasonable seizures and searches may not be
26 violated; and a warrant may not issue except on probable cause, supported by oath
27 or affirmation, particularly describing the place to be searched and the persons and
28 things to be seized."  CAL. CONST., art. I §13.  California Civil Code §43 reads,

-17-

1  "Besides the personal rights mentioned or recognized in the Government Code,

2  every person has, subject to the qualifications and restrictions provided by law, the

3  right of protection from bodily restraint or harm, from personal insult, from

4  defamation, and from injury to his personal relations." CAL. CIV. CODE § 43.

5  Similarly, California Civil Code §52.3 provides, "No governmental authority, or

6  agent of a governmental authority, or person acting on behalf of a governmental

7  authority, shall engage in a pattern or practice of conduct by law enforcement

8  officers that deprives any person of rights, privileges, or immunities secured or

9  protected by the Constitution or laws of the United States or by the Constitution or

10  laws of California." CAL. CIV. CODE § 52.3.

11        In Lopez v. Youngblood, 609 F.Supp.2d 1125 (E.D. Cal. 2009), the Eastern

12  District of California held that plaintiffs may not bring damages claims directly

13  under Article I, Section 13 of the California constitution. Id.; see also Brown v.

14  County of Kern, 2008 WL 544565, *17 (E.D. Cal. 2008) (plaintiff in an excessive

15  force case could not bring a damages claim directly under Article 1, Sections 7 or

16  13 of the California Constitution in part because alternative statutory and/or

17  common law causes of action were available); Manning v. City of Rohnert Park,

18  2007 WL 1140434 (N.D. Cal. 2007) ("Neither the plain language of the article 1,

19  section 13, nor the available legislative history indicate an intent on behalf of the

20  California Legislature to permit the recovery of monetary damages for its

21  violation"). The same analysis applies to California Civil Code § 43 which simply

22  expresses a right, but does not, in and of itself, provide any method or means for

23  enforcement of that right. Indeed, there is nothing within the legislative history of

24  Section 43 that would suggest that the drafters of the statute intended it to be self-

25  executing.

26        Moreover, with regard to Section 52.3, that statute clearly provides that a

27  civil action may only be brought by the California Attorney General – there is no

28  authorization for a civil action by a private individual within the statute. CAL. CIV.

-18-

1  CODE §52.3(b) ("The Attorney General may bring a civil action in the name of the

2  people to obtain appropriate equitable and declaratory relief to eliminate the

3  pattern or practice of conduct specified in subdivision (a), whenever the Attorney

4  General has reasonable cause to believe that a violation of subdivision (a) has

5  occurred.")

6      Therefore, where none of the constitutional provisions or statutes upon

7  which the plaintiff relies to support his state claims for relief create a private right

8  of action, it is respectfully submitted that those claims be dismissed.

9  **V.    CONCLUSION**

10      Based on the foregoing, it is respectfully requested that this Court grant

11  summary judgment in favor of Defendants City of Santa Ana and Officers Blaine

12  Moeller and Enrique Ruvalcaba.

13  DATED:  October 23, 2009          JOSEPH W. FLETCHER
                                        City Attorney
14                                      City of Santa Ana

15

16                              By:  _____

17                                    JOSE SANDOVAL
                                      Managing Senior Assistant City Attorney
18

19

20

21

22

23

24

25

26

27

28

-19-

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen and not a party to the within entitled action.  My business address is 888 South Figueroa Street, Suite 1960, Los Angeles, California 90017.

On October 23, 2009, I served the foregoing document(s) described as:

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

upon the interested parties in this action by placing the true copies thereof enclosed in sealed envelopes addressed to the following persons:

William Emil Samland, III                    Plaintiff Pro Se
3550 Wilshire Boulevard
Suite 105-43
Los Angeles, CA  90010


**BY MAIL**
  X   I deposited such envelope in the mail at Los Angeles, California.  The
        envelope was mailed with postage thereon fully prepaid.

        Executed on October 23, 2009, at Los Angeles, California.

**FEDERAL**
  X   I declare under penalty of perjury under the laws of the United States of
        America that the above is true and correct.

_____                    _____
    Linda Ramirez                                                    (Signature)